# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 19, 2007

## STATE OF TENNESSEE v. JUNE LEEANN FRANKS

**Direct Appeal from the Circuit Court for Giles County**
**No. 12513    Stella L. Hargrove, Judge**

---

**No. M2006-02157-CCA-R3-CD** - Filed June 28, 2007

---

The Defendant, June Leeann Franks, pled guilty to statutory rape.  Her request for judicial diversion was denied by the trial court, who sentenced her to fifteen months to be served on probation.  She appeals that decision.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robert H. Stovall, Jr., Assistant Public Defender, Pulaski, Tennessee, for the Appellant, June Leeann Franks.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Mike Bottoms, District Attorney General; and Patrick Butler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Facts

The Defendant was indicted for statutory rape, and, on August 11, 2006, the Defendant and the State agreed to a proposed plea whereby the Defendant would be sentenced to two years, the maximum as a Range I offender for a Class E felony, with post-plea judicial diversion and 200 hours of community service.  The trial court refused to accept that plea agreement.  The Defendant then entered into a plea agreement whereby the trial court would determine an appropriate sentence, but the Defendant specifically requested judicial diversion.  The trial court accepted that plea agreement.

The same day that the Defendant, twenty-five at the time of the relationship, entered her guilty plea, the factual basis for the plea was stated by the defense attorney as follows:

[The Defendant] has admitted to Investigator Butch Sutton that she participated in oral sex with a young man who was 16 years old on several occasions during the time period mentioned in the indictment. She has cooperated with the police; has been truthful with the police. She has admitted her guilt. I think she had some misunderstanding of the law, President Clinton had several years ago, that oral sex amounted to statutory rape. But I've discussed with her, in my office, the elements of sexual penetration, and she understands, now, what the law requires.

At the sentencing hearing, Linda Lipham testified that, when she helped to prepare the presentence report in this case, she interviewed the Defendant. Lipham stated that the Defendant admitted the acts associated with the statutory rape charge, and she was cooperative. On cross-examination, Lipham stated the Defendant was "real sweet" and respectful. The Defendant appeared to have a good relationship with her family. The Defendant was working with her father as a plumber, and she lived at her parents' home. She did not appear to be under the influence of drugs or alcohol.

David Pratt testified he also helped prepare the presentence report, and, as such, he mailed the victim a victim's impact statement form. That form was returned and included in the presentence report. Further, he testified that his investigation revealed that the Defendant had excellent social history, no prior criminal record, and finished high school, all factors that would generally weigh in favor of being amenable to rehabilitation. The Defendant also reported no use of alcohol or drugs, and she had steady employment. The only negative was that the Defendant was "not particularly contrite" in that "she minimized some of her criminality." Pratt testified that the Defendant indicated she and the victim developed a relationship as a boyfriend and girlfriend normally would. The Defendant seemed to "gloss over the fact of the age difference."

Jonathan Alsup, Sr., the victim's father, testified the victim was sixteen years old, but he was fifteen at the time of the relationship with the Defendant. Alsup learned of the relationship because he "walked in on them" at his house. Later, the victim told Alsup about the relationship. One morning, two weeks later, the victim did not come home one night and did not attend school the next day. He finally arrived at home at 11:00 a.m. the next morning, but Alsup had already gone to the police to have the victim arrested as a runaway. Alsup stated the relationship with the Defendant has caused a serious strain in his relationship with his son because the victim had been angry with Alsup over the discipline Alsup imposed after learning of the relationship between the victim and the Defendant. Alsup stated that he first knew that the Defendant and the victim had become friends through her place of employment, Highland Christian Academy, which was where the Defendant attended school.

On cross-examination, Alsup clarified that the victim attended Highland Christian Academy through the eighth grade, and, beginning in the ninth grade, he attended Giles County High School.

2

The relationship between the victim and the Defendant did not begin until the Defendant was in the ninth grade. The victim and the Defendant were not involved in a relationship while at the same school. However, Alsup stated the victim continued to attend church at Highland Christian Academy after he began the ninth grade.

Investigator Butch Sutton testified that, as he began his investigation into the relationship between the victim and the Defendant, he first interviewed the Defendant who stated that she and the victim went on their first date on August 12, 2005. Shortly thereafter, the sexual relationship, which did not include intercourse, began. Investigator Sutton stated that the Defendant admitted she and the victim had oral sex almost every time they were together, which was almost every day. Investigator Sutton explained this was a crime, and it appeared the Defendant disagreed. The Defendant appeared to feel that, because the two did not engage in intercourse, there was nothing criminal. The Defendant indicated she declined to have intercourse by her choice because she had been involved in a sexual relationship at fifteen, and she did not want to expose the victim to that kind of relationship.

On cross-examination, Investigator Sutton stated that the Defendant did not appear to know that oral sex was considered sex under the statutory rape law. The indictment covered actions occurring between August 26 and December 31, 2005, and Investigator Sutton had no indication that any activity occurred outside that time frame. Additionally, Investigator Sutton stated that the Defendant was respectful, and Investigator Sutton was willing to "go along with the ADA on what ever he recommend[ed]" concerning judicial diversion. The victim did not show any signs of physical injuries. The victim did state that he had digitally penetrated the Defendant.

Brenda Kerley, the Defendant's mother, testified that the Defendant was twenty-five, and she was working full-time as a plumber. She lost her job at Highland Christian Academy after the indictment in this case. The Defendant did not suffer from any mental or emotional problems. Kerley stated that the Defendant moved back in with her after the Defendant got divorced, in July of 2005. The Defendant never used alcohol or drugs, and she had a good reputation in the community.

On cross-examination, Kerley stated that she first learned of her daughter's sexual relationship with the victim in January of 2006. The Defendant did not seem to think there was much of a problem because they cared about each other. The Defendant was a little concerned about the victim's age, "and it being his first time and stuff like that."

Jeremy Clark, the Defendant's ex-brother-in-law, testified that the Defendant's reputation in the community was good, "other than this." Clark stated he saw the Defendant four or five times a month.

Sherry Powell, the Defendant's friend, stated she had known the Defendant for ten to fifteen years. They went to church together, and she was a "decent, caring, loving, woman. She's a Christian." When the Defendant attended Highland Christian, the two of them were in handbells

together, and they attended church every Sunday morning, Sunday night, and Wednesday night. The Defendant left Highland Christian and began attending Wells Baptist, and Powell stated the Defendant was in the choir there.

After argument, the trial court stated that there were several factors in favor of granting judicial diversion. The Defendant had no criminal record, she had a favorable social history, and she completed high school at a church school. She was employed, and had excellent physical and mental health. The factors against judicial diversion were the circumstances of the offense, especially the fact that the Defendant did not "understand that that is a really a sexual relationship, since it didn't involve sexual intercourse." The trial court expressed "great concern" with the fact that the victim attended Highland Christian Academy, where the Defendant had worked, despite the fact that the sexual relationship did not begin until he was in the ninth grade at Giles County High School. Additionally, the trial court found the Defendant was not amenable to correction because the relationship only ceased when the victim's father intervened. The Defendant did not appear to show any remorse for her actions. The trial court also concluded there was a need for deterrence despite the State not admitting evidence of any similar situations. Further, the trial court found judicial diversion would not serve the interests of the public, and it was concerned with the message it would send. The trial court stated, "in our society, somebody has to be the adult in the situation and make those decisions." As such, the trial court found that the factors against judicial diversion outweighed the factors for it, and the request for judicial diversion was denied.

In addressing probation, the trial court considered what sentence was necessary to avoid depreciating the seriousness of the offense and what would provide an effective deterrence. The trial court also determined the Defendant failed to accept responsibility for her crime. The trial court determined the Defendant abused a position of private trust as "this child has been in the school where she worked for many years." "[T]he [D]efendant stood in a relationship to the victim that promoted confidence, reliability, or faith . . . ." The court gave "some weight" to the mitigating factor that the "defendant's conduct neither caused nor threatened serious bodily injury," but it stated, "I know it's a factor, but it just doesn't seem to fit." As a result, the court sentenced the Defendant to fifteen months, and stated, "One of the reasons I'm doing 15 months is that [the victim] turns 18 on December 21, 2007. So I think that's an appropriate sentence." The trial court suspended the sentence and placed the Defendant on probation for fifteen months.

## II. Analysis

### A. Judicial Diversion

On appeal, the Defendant alleges the following: (1) that the trial court erred in denying her request for judicial diversion; and (2) the trial court erred in enhancing her sentence based upon a finding that the Defendant was in a position of private trust.

When a defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim.

App. 1997). We must conclude that "no substantial evidence exists to support the ruling of the trial court" if we are to grant the Defendant relief. *Id.*

Judicial diversion falls under Tennessee Code Annotated section 40-35-313(a)(1)(A), pursuant to which a judge can defer proceedings without entering a judgment of guilty. The defendant would be placed on probation, but she would not be considered a convicted felon. T.C.A. § 40-35-313(a)(1)(A) (2006). To be eligible for judicial diversion, a defendant must have pled guilty to, or been found guilty of a class C, D, or E felony and must have not previously been found guilty of a felony or class A misdemeanor. In the case under submission, the trial court found that the Defendant was eligible for judicial diversion based on these requirements. However, eligibility in and of itself does not entitle a defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed to be eligible for judicial diversion, the trial court must consider several factors when deciding whether or not to grant judicial diversion. Due to the similarities between pre-trial diversion — determined initially by the district attorney general — and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*Cutshaw*, 967 S.W.2d at 344. Additionally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Id.* (citing *Bonestel*, 871 S.W.2d at 168).

We initially note that all parties are in agreement, and the presentence report indicates, the Defendant has never been convicted of a Class A misdemeanor or any felony. Thus, she is eligible for judicial diversion. In analyzing whether to grant judicial diversion, the trial court found a number of factors weighed in favor of judicial diversion — the Defendant's lack of a criminal record, her social history, mental and physical condition, emotional stability, lack of drug use, employment, and her home environment. Weighing against judicial diversion, the trial court found the Defendant was not amenable to correction primarily because the Defendant appeared to express no remorse for her actions. Evidence on this issue came from the testimony of one of the officers who prepared the presentence report and the investigating officer. Also, the Defendant was apparently prepared to continue the relationship until the victim's father intervened. Additionally, the court found the circumstances of the offense weighed against judicial diversion, and there was a need for deterrence,

5

despite, as the court acknowledged, the lack of evidence presented by the State on this issue. Finally, the trial court determined judicial diversion would not serve the best interest of the public as it would send the wrong message.

The Defendant argues that the trial court, in analyzing whether the Defendant was amenable to correction, failed to consider the testimony of the probation and investigating officers who testified the Defendant admitted to her actions, though she was surprised they were criminal. The Defendant was cooperative and respectful, and pled guilty, accepting responsibility.

In addressing the need for deterrence, the Defendant notes the trial court acknowledged that the State had "not put into the record any cases that involve similar situations of maybe teachers and students" or other cases involving adults and minors. The Defendant argues the trial court did not consider "[w]hether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole." *Hooper*, 29 S.W.3d at 10. Additionally, the trial court did not analyze whether this crime is of the type that is deterrable under the guidance of *Hooper*.

With respect to the circumstances of the offense, the Defendant argues the trial court erred in reasoning that this factor weighed against the Defendant because of the age difference, the almost daily oral sex, and the fact that the Defendant did not realize this was criminal. The Defendant contends that, as statutory rape cases go, this is not a particularly egregious case. The offense, by nature consists of two individuals, with a legally significant age disparity, engaging in some type of sexual relationship.

In addressing whether judicial diversion would serve the ends of justice and the best interest of the public, the Defendant argues that merely noting that the Defendant should have acted like an adult in this situation, and that the trial court did not want to send the wrong message is insufficient. Additionally, the Defendant notes the trial court failed to consider whether judicial diversion would serve the best interest of the Defendant.

Upon review, we conclude there is some evidence of the Defendant's lack of remorse. Testimony from David Pratt, one of the probation officers who prepared the presentence report, indicated that the Defendant seemed to "gloss over the fact of the age difference" and "she minimized some of her criminality." Investigator Sutton echoed that sentiment. Investigator Sutton's testimony provided evidence that the Defendant thought that, because the relationship did not involve intercourse, it was somehow less criminal. This type of evidence is relevant to whether the Defendant is amenable to correction.

The deterrence factor, found by the trial court, was present despite a lack of evidence concerning similar episodes in the area or state. The Tennessee Supreme Court has stated that there is some aspect of general deterrence in every case, and in analyzing the weight given to the deterrence factor, we look at whether "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes."

*Hooper*, 29 S.W.3d. at 10. The Supreme Court has also observed that certain crimes are more deterrable than others. *Id.* Indeed, "Actions that are the result of intentional, knowing, or reckless behavior or those motivated by a desire to profit from illegal activity are probably more deterrable than those which are not the result of a conscious effort to break the law." *Id.* at 11. We may also consider whether there was substantial publicity surrounding the case, whether this was part of a criminal enterprise, and whether the Defendant has previously engaged in conduct of a similar type. *Id.* at 11-12. We find no evidence in the record to support any of these factors. The trial court admitted the State had "not put into the record any cases that involve similar situations of maybe teachers and students" or other cases involving adults and minors. Additionally, this was a not a crime for profit or one that was a result of a conscious effort to break the law. There is no evidence that this was part of a criminal enterprise or that the Defendant has previously engaged in a similar course of conduct. There was testimony that the Defendant had been interviewed on television, but there is no evidence where or when that interview was aired or how much other publicity surrounded the case.

The trial court also found the circumstances of the case warranted a denial of judicial diversion. We conclude there is evidence concerning the frequency of the sexual acts between the Defendant and the victim, in that they occurred almost daily over a period of months. Additionally, there was evidence this relationship was procured while the Defendant worked as a secretary at the victim's school.

Finally, in analyzing whether the ends of justice would have been served and whether judicial diversion was in the best interest of the public, the trial court found that the wrong message would be sent to potential statutory rapists if the Defendant were given judicial diversion.

Although there was no substantial evidence to support the need for deterrence, there was substantial evidence for the remaining three factors, with the circumstances of the case weighing heavily. As a whole, we conclude there is substantial evidence to support the trial court's denial of judicial diversion. The Defendant is not entitled to relief on this issue.

### B. Sentence

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the

7

trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Defendant challenges the application of the abuse of a position of private trust enhancement factor. *See* T.C.A. § 40-35-114(14) (2006). In *State v. Gutierrez*, 5 S.W.3d 641 (Tenn. 1999), our Supreme Court held that:

> Application of [this] factor requires a finding, first, that the defendant occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability or faith.

5 S.W.3d at 645 (quoting *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996)).

The evidence in the record indicates that, despite not working at the same school at the time the relationship began, the victim did attend Highland Christian Academy while the Defendant was a secretary there, from January 14, 2005, when the Defendant began working, until the summer, when the victim's school year finished. Thus, the trial court could properly conclude the relationship was one of confidence or reliability. To enhance the Defendant's sentence based on this factor was not improper.

The trial court also mitigated the Defendant's sentence based on the lack of physical injury or threat of physical injury to the victim. *See* T.C.A. § 40-35-115(1) (2006). The trial court duly considered the issue and gave it "some weight." Because the trial court followed the proper procedures, we will not disturb its decision weighing the factor. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

ROBERT W. WEDEMEYER, JUDGE